# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CORY MIXAN,

          Plaintiff,

v.

E. GREENBAUM, et al.,

          Defendants.

No. 19-CV-05399

Judge Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

Plaintiff Cory Mixan (Mixan), a pre-trial detainee at the Cook County Department of Corrections sustained a broken jaw following an altercation with another detainee. Mixan alleges that the doctors who treated his injuries, Dr. Evan Greenbaum (Dr. Greenbaum), Dr. David Hernandez (Dr. Hernandez), Dr. Jacqueline Greene (Dr. Greene), and Dr. Jennifer Best (Dr. Best, collectively "Defendant Doctors"), among other things, acted with deliberate indifference to Mixan's medical needs under 42 U.S.C. § 1983 and rendered inadequate medical treatment. R. 48, First Amended Complaint (FAC).[1]

Before the Court is Defendant Doctors' motion for partial summary judgment on Mixan's 42 U.S.C. § 1983 claim and dismissal of the remaining state claims without prejudice. R. 80, Mot. Summ. J. For the reasons stated below, Defendant

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Doctors' partial motion for summary judgment is granted. The Court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts II and III, and dismisses the case, without prejudice, for filing in Illinois state court.

## Background

The following facts are set forth favorably to Mixan, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). Although the Court draws all reasonable inferences from the facts in Mixan's favor, the Court does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed.

Mixan, while a Cook County Department of Corrections pre-trial detainee, was involved in an altercation with another detainee on June 13, 2016, in which Mixan's jawbone was broken in two places. DSOF ¶¶ 15–16.[2] Mixan was taken to the emergency room at Cermak Health Services and then transported to John H. Stroger Jr. Hospital later that day. *Id*. ¶ 17. At Stroger, Mixan underwent a computed

---

[2]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for the Defendant Doctors' Statement of Undisputed Facts (R. 81); "Pl.'s Resp. DSOF" for Mixan's Response to the Defendant Doctors' Statement of Undisputed Facts (R. 87); "PSOAF" for Mixan's Statement of Additional Facts (R. 87 at 33); and "Defs.' Resp. PSOAF" for the Defendant Doctors' Response to Mixan's Statement of Undisputed Facts (R. 93).

tomography scan (CT scan) and was diagnosed with bilateral jaw fractures. *Id*. ¶ 18. Defendant Doctors and Mixan's experts disagree as to whether the CT scan showed nondisplaced or displaced fractures on either of the two sides; the operative report does not indicate whether the fractures were displaced. PSOAF ¶¶ 1, 8; Defs.' Resp. PSOAF ¶¶ 1, 8. When patients present with facial trauma, a member from Stroger's oral maxillofacial surgery, otolaryngology (ENT), or plastic surgery departments are consulted, depending on the day. DSOF ¶ 19. Here, the ENT department was consulted to treat Mixan's bilateral fractures. *Id*. ¶ 23.

On June 14, 2016, Dr. Best, a second-year ENT resident, evaluated Mixan and determined, with the approval of her attending physician, Dr. David Conley, that surgery was necessary. DSOF ¶ 23. The parties disagree on the degree of Dr. Conley's involvement in the evaluation and assessment. *Id*. ¶ 23; Pl.'s Resp. DSOF ¶ 23; PSOAF ¶ 5; Defs.' Resp. PSOAF ¶ 5. Dr. Best offered Mixan a choice between closed reduction with maxillomandibular fixation surgery (MMF) or open reduction with internal fixation surgery (ORIF) as treatment options. DSOF ¶ 25. Under MMF, a patient's lower jawbone (referred to as the mandible) and upper jawbone (referred to as the maxilla) are wired shut together over a period of time to reduce the fracture and promote healing. R. 82, Memo. Summ. J. at 3–4; FAC ¶ 17. Under ORIF, after aligning the upper and lower jawbones, incisions are made exposing broken bones and then secured with plates and screws. Memo. Summ. J. at 3–4. Dr. Best reviewed the risks, benefits, alternatives, and complications with Mixan, who ultimately chose the more invasive procedure, ORIF. DSOF ¶ 26.

Defendant Doctors and Mixan disagree on whether Mixan agreed to ORIF with an understanding of the risks. DSOF ¶ 26; Pl.'s Resp. DSOF ¶ 26. Defendant Doctors assert that Mixan, during the discussion with Dr. Best, agreed to ORIF and indicated he would not be able to tolerate MMF. DSOF ¶¶ 26–27. Dr. Best recorded this in her contemporaneous note. R 84-2, Stroger Records-A at 46 ("offered MMF vs. ORIF, patient says he would not be able to tolerate MMF and asked for ORIF, discussed risks of malunion, nonunion, chronic pain, facial numbness, plate exposure and need for operation; patient consented"). Mixan, on the other hand, has no memory of the specifics of the discussion, beyond remembering that some physician recommended surgery. DSOF ¶ 40; Pl.'s Resp. DSOF ¶¶ 26–27; R. 81-11, Mixan Sept. 2018 Dep. Tr. at 71:16–73:7. Dr. Best completed an informed consent form, listing ORIF as the procedure to be performed, and acknowledging that the typical risks included malunion, chronic pain, plate extrusion, and numbness. DSOF ¶ 29. Dr. Best and Mixan signed the consent form. R. 87-2, Informed Consent Form. The form is undated. *Id.* Dr. Conley signed off on Dr. Best's assessment and recommendation, and scheduled surgery for the next day, June 15, 2016. DSOF ¶ 28.

Prior to surgery, Dr. Hernandez, a fifth-year ENT resident, examined Mixan. *Id*. ¶ 35. Dr. Hernandez's contemporaneous note of the examination indicates "risks/benefits/alternatives discussed and informed consent obtained." Stroger Records-A at 49. It is unclear whether this note refers to Dr. Best's discussion with Mixan or a second discussion between Dr. Hernandez and Mixan. Pl.'s Resp. DSOF ¶ 36; PSOAF ¶ 12; Defs.' Resp. PSOAF ¶ 12. Dr. Hernandez testified that he would

typically repeat the informed consent discussion, and that he recalled examining and speaking with Mixan preoperatively but did not recall whether there had been an informed consent discussion between them. R. 81-7, Hernandez Dep. Tr., at 64:14–67:12. Mixan had no memory of any discussions with Dr. Hernandez. Mixan Sep. 2018 Dep. Tr., at 71:16–73:7; R. 81-2, Mixan Aug. 2020 Dep. Tr. at 34:22–35:6. Dr. Greenbaum, the attending ENT, signed off on Dr. Hernandez's assessment and recommendation, including to perform ORIF. DSOF ¶ 38; Pl's Resp. DSOF ¶ 38.

Dr. Greenbaum, along with Dr. Hernandez, Dr. Greene (a fourth year ENT resident), and Dr. Best performed the surgery. DSOF ¶¶ 5, 7, 9, 11. The Defendant Doctors first aligned and wired shut Mixan's jaw using MMF to assist in placing the fixation plates. DSOF ¶ 55. Next, the Defendant Doctors addressed the right mandibular angle fracture. DSOF ¶ 56. They attempted to use a smaller champy plate to fix the fracture, but finding that it did not provide enough fixation and allowed too much movement, they instead employed a larger plate. DSOF ¶¶ 57–59. Defendant Doctors and Mixan differ as to whether the plate was properly secured with four screws when it was installed, with Mixan contending at least one screw was not inserted into bone. DSOF ¶ 60; Pl.'s Resp. DSOF ¶ 60.

The Defendant Doctors then placed a plate to fix the left parasymphyseal fracture using four screws to secure the plate and preserving the mental nerve. DSOF ¶ 61. The parties disagree here. *Id.* ¶ 61; Pl. Resp. DSOF ¶ 61. Mixan contends that the Defendant Doctors neither properly secured the plate with the screws nor protected the mental nerve. Pl.'s Resp. DSOF ¶ 61. Dr. Hernandez's post-operative

note reported "mandible fractures rigidly fixed." DSOF ¶ 62. Dr. Greenbaum's operative report states, "[e]xcellent reduction of both fractures was achieved at the time of rigid fixation. Occlusion is as close to normal as we were able to achieve and was deemed satisfactory." Stroger Records-A at 111. Mixan was discharged from Stroger on June 15, 2016. FAC ¶ 33.

A week after the surgery, on June 22, 2016, Mixan obtained a CT scan at Cermak. Defs.' Resp. PSOAF ¶ 18; FAC ¶ 36. Mixan's expert, Dr. John Sisto, opined in his report that the June 22 CT scan shows left-side displacement that is not visible on the pre-operative CT scan. PSOAF ¶ 18. Mixan and Defendant Doctors disagree with Dr. Sisto's opinion that the left-side displacement appeared on the June 22 CT scan. *Id.* ¶ 18; Defs.' Resp. PSOAF ¶ 18. Mixan also contends that the June 22 CT scan reflects the state of Mixan's jaw after the June 15 surgery. PSOAF ¶ 19. Defendant Doctors disagree here as well. Defs.' Resp. PSOAF ¶ 19. Mixan was then seen two additional times at the Stroger ENT clinic following his surgery. DSOF ¶ 69.

Mixan could not open his month normally for two to three months following the surgery. PSOAF ¶ 21. After the pain and swelling from the surgery subsided, he began noticing issues including pain from the right-side plate into his right ear, no feeling in his chin, and difficulty eating. *Id.* Mixan reported these complaints to officials at the Cook County Jail. *Id.*

Two years later, in August 2018, Dr. Jay Swanson, an oral surgeon, examined Mixan. PSOAF ¶22. In January 2019, Dr. Swanson removed Mixan's right-side plate.

PSOAF ¶ 22. At that time, the plate was "hanging down" with "screws penetrating lingual cortex" and Dr. Swanson's operative report indicated that an "inferior screw was not engaged in bone." *Id.* ¶¶ 23–24. Dr. Swanson does not know why or when the screw became loose. Defs.' Resp. PSOAF ¶ 34; R. 87-5, Swanson Dep. Tr. at 111:7-18.

Mixan subsequently filed this lawsuit, which he eventually amended against Defendant Doctors and Cook County, asserting a claim under the Eighth Amendment for deliberate indifference to medical needs (Count I); medical negligence under Illinois law (Count II); and vicarious liability against Cook County (Count III). R. 48. Defendant Doctors now move for partial summary judgment on Count I and for dismissal of the remaining state claims (Counts II and III).

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment

motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Defendant Doctors argue Mixan has failed to provide evidence from which a factfinder could find that any of the Defendant Doctors acted purposefully, knowingly, or recklessly in the treatment offered and performed on Mixan, and thus, they are entitled to summary judgment on Count I. Assuming the Court grants Defendant Doctors' motion for summary judgment, Defendant Doctors urge the Court to relinquish its supplemental jurisdiction over the remaining claims. Mixan, of course, refutes this and argues that a factfinder could find that the Defendant Doctors acted with the requisite intent by failing to assertively recommend MMF over ORIF, and by failing to adequately perform Mixan's surgery. Regardless of the decision on the partial summary judgment motion, Mixan insists that the Court should retain its jurisdiction over the state court claims out of a necessity for judicial economy, convenience, and fairness. For the following reasons, the Court grants Defendant Doctors' motion for partial summary judgment and dismisses the remaining state claims.

## I.     42 U.S.C. § 1983 Claim

Because Mixan was a pre-trial detainee at all times relevant to this case, his claims must be analyzed under the Fourteenth Amendment as opposed to the Eighth Amendment which is applied to prisoners. *Turner v. Paul*, 953 F.3d 1011, 1015 (7th Cir. 2020). On this point, the parties do not disagree. To succeed on a claim of deliberate indifference in the medical treatment of a pre-trial detainee, a plaintiff must demonstrate that (1) the defendant acted purposefully, knowingly, or recklessly; and (2) the plaintiff's treatment was objectively unreasonable. *Id*. To demonstrate a defendant acted with the requisite intent, the plaintiff must proffer evidence that "encompasses all states of mind except for negligence." *Taylor v. Dart*, 2022 WL 4483908, *15 (N.D. Ill. Sept. 27, 2022) (citing *Pittman by & through Hamilton v. Cnty. of Madison, Ill.*, 970 F. 3d 823, 827–28 (7th Cir. 2020)). That is, "negligence or even gross negligence will not suffice." *McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). The defendant's intent "is measured against each defendant's actions (that is, whether they intentionally or recklessly engaged in the action), rather than their subjective views of the risks of the allegedly inadequate medical care." *Taylor*, 2022 WL 4483908 at *6 (cleaned up).[3] A plaintiff then demonstrates that the defendant's conduct was objectively unreasonable by focusing on "the totality of facts and circumstances faced by the individual alleged to have provided medical care and to

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.* (citing *McCann*, 909 F. 3d at 886).

Although deliberate indifference most commonly takes the form of denial or delay of medical care in response to an objectively serious medical need, it can also encompass cases in which a physician's viewpoint is so unreasonable that their choices are reckless. *Gayton v. McCoy*, 593 F.3d 610, 622–23 (7th Cir. 2010) ("[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.") (cleaned up).

Defendant Doctors base their motion on the first element. Accordingly, Defendant Doctors argue that Mixan has failed to provide evidence that the Defendant Doctors, either collectively or individually, acted purposefully, knowingly, or recklessly by performing ORIF rather than MMF, and in their performance of ORIF surgery entirely. The Court agrees.

## A. Choice of treatment

Defendant Doctors argue that Mixan has failed to show that the Defendant Doctors "acted purposefully, knowingly, or recklessly in considering the consequences of an inmate's medical condition," as required to bring a Section 1983 claim by a pre-trial detainee under the Fourteenth Amendment. Memo. Summ. J. at 10. Defendant Doctors cite *Miranda v. County Lake*, 900 F.3d 335, 350 (2020), among other

decisions, to underscore that the requisite intent element cannot be satisfied by a showing of negligence or gross negligence. *Id*. As evidence, Defendant Doctors rely on the contemporaneous medical records and deposition testimony from the Defendant Doctors.

Mixan, on the other hand, argues that a jury could find the Defendant Doctors' acted with the requisite intent "by failing to affirmatively recommend closed reduction to Mr. Mixan and rubber-stamping Dr. Best's plan to ignore the indicated closed reduction procedure and instead proceed with a non-indicated and riskier ORIF procedure." R. 86, Resp. at 5. Mixan first relies on Dr. Sisto's expert opinions to establish that Defendant Doctors knew that MMF was preferred to ORIF, but failed to recommend MMF to Mixan. Resp. at 5–6. As evidence of intent, Mixan points to Dr. Greenbaum's deposition testimony that he would have recommended MMF to Mixan, *id*. at 6, and explains that the absence of evidence is evidence of the Defendant Doctors acting purposefully, knowingly, and recklessly in regard to Mixan's treatment options, *id*. at 6–7.

But to defeat summary judgment, Mixan as the nonmoving party must provide conflicting evidence establishing that an issue of fact exists as to whether each of the Defendant Doctors at the time acted purposefully, knowingly, or recklessly in not recommending MMF over ORIF to Mixan. *See Miranda*, 900 F.3d at 353. The absence of evidence will not satisfy this standard. With that, the Court now turns to each Defendant Doctor individually to assess whether he or she meets the requisite intent for a Section 1983 claim for deliberate indifference to medical treatment.

The Court starts with Dr. Best. The record contains no evidence that Dr. Best purposefully, knowingly, or recklessly offered treatment options to Mixan. It is undisputed that Dr. Best evaluated Mixan on June 14, 2016, and diagnosed him with bilateral fractures of the mandible. DSOF ¶ 23. The uncontroverted evidence further supports that Dr. Best presented Mixan with the only two surgical options available for bilateral fractures of the mandible: ORIF and MMF. *Id.* ¶ 25. Dr. Best went over the risks, benefits, alternatives, and complications of both treatments with Mixan. *Id.* ¶ 26. Mixan opted for ORIF over MMF. *Id.* ¶¶ 26–27. Mixan does not dispute any of the above. He maintains that he does not recall the details of his interaction with Dr. Best. PSOAF ¶ 2 ("Mr. Mixan testified he has no memory of this conversation with Dr. Best and described this time as 'foggy' and himself as 'impaired'"). The attending physician, Dr. Conley, agreed with Dr. Best's diagnosis and plan of treatment. DSOF ¶¶ 26–27; PSOAF ¶ 5 (Dr. Conley added to Dr. Best's note that he "discussed the patient's history, physical findings and plan for care with the resident and agree[d]."). At some point, Mixan signed an informed consent form for ORIF acknowledging the risks of ORIF included "malunion, chronic pain, plate extrusion, [and] numbness." PSOAF ¶ 6. Again, Mixan does not deny signing the consent form. Mixan underwent surgery the next day, June 15, 2016. DSOF ¶ 28. It is undisputed that Mixan suffered from a bilateral mandible fracture that could only be repaired with surgery, of which there were two options, both presented to Mixan. Mixan has not adduced evidence that Dr. Best's diagnosis and plan of treatment was "such a substantial departure from accepted professional judgment, practice, or standards[.]"

*Gayton*, 593 F.3d at 622–23. In short, a factfinder could not find Dr. Best's actions reflect deliberate indifference.

Similarly, the record is devoid of evidence showing that Dr. Hernandez or Dr. Greenbaum acted with the requisite intent. Dr. Hernandez conducted a preoperative evaluation with Mixan on June 15, 2016, and indicated in his notes that "risks/benefits/alternatives discussed and informed consent obtained." Stroger Records-A at 49. Dr. Hernandez testified that from Mixan's CT scan, the left-side fracture looked "fairly non-displaced," but was not asked about the right-side fracture at his deposition. PSOAF ¶ 8; Defs.' Resp. PSOAF ¶ 8; Hernandez Dep. Tr. 69:22–70:4; 117:24–118:13. Again, the undisputed evidence supports that Dr. Hernandez conducted another evaluation of Mixan, reviewed Mixan's CT scan before surgery, and confirmed Mixan's consent to ORIF. *See id.* Nothing in the record supports the conclusion that Dr. Hernandez acted with deliberate indifference, either.

Turning to Dr. Greenbaum, the evidence also fails to support the finding that he acted with deliberate indifference. For starters, there is no evidence that Dr. Greenbaum saw Mixan prior to surgery. Dr. Greenbaum, as Mixan's attending physician, approved Mixan's ORIF surgery and added to Dr. Hernandez's note that he had discussed the treatment plan with the house-staff, personally reviewed the CT scan, and agreed with the treatment plan. PSOAF ¶ 9. In his operative report, Dr. Greenbaum states that Mixan was given a choice between ORIF and MMF and "absolutely declined" the latter. *Id.* Again, nothing in the record supports a conclusion that Dr. Greenbaum acted with deliberate indifference.

13

Finally, the record is devoid of evidence that Dr. Greene saw Mixan prior to surgery. Indeed, Dr. Greene's name is listed only three times in Mixan's medical record—once as one of six doctors "involved with the pre-operative positioning of Mr. Mixan." DSOF ¶ 53. Therefore, the evidence does not support that Dr. Greene acted purposefully, knowingly, or recklessly with regards to Mixan's treatment.

Mixan contends that this case is analogous to an out-of-district case, *Elliot v. Reddy*, 2013 WL 3283345 (E.D. Cal. Jun. 27, 2013).[4] Resp at 7–8. However, *Elliot* is easily distinguished. First and foremost, the plaintiff in *Elliot* was a prisoner, thus his claim, unlike Mixan's claim, was evaluated under the Eighth, not the Fourteenth Amendment. *Id.* at *5. Second, in *Elliot*, the defendant surgeons performed an unnecessary kidney removal procedure based on a misdiagnosis of cancer by a non-specialist. *Elliott*, 2013 WL 3283345, at *9. Here, in contrast, it is undisputed that Defendant Doctors correctly diagnosed Mixan's jaw fracture. DSOF ¶ 18; Pl.'s Resp. DSOF ¶ 18. The issue advanced by Mixan in his claim is that the treatment option was medically inappropriate, not that the diagnosis was incorrect.

Further, Mixan's reliance on *Ortiz v. Webster*, 655 F.3d 731 (7th Cir. 2011), is similarly misplaced. In *Ortiz*, the Seventh Circuit found that there was a genuine issue of material fact as to deliberate indifference when a prison doctor ignored his

---

[4]The Ninth and Second Circuits, like the Seventh Circuit, have adopted an interpretation of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), in which an objective reasonable standard under the fourteenth amendment for pre-trial detainees is applied to 26 U.S.C. § 1983 deliberate indifference to medical treatment cases that is different than the subjective standard under the eighth amendment standard for prisoners. *See Miranda*, 900 F.3d 335.

own conclusions about plaintiff's need for eye surgery. *Ortiz*, 655 F.3d at 735 ("The problem with Dr. Webster's inaction, then, is not that he chose the wrong side in a medical debate. He ignored his own opinion, undisputed in this record, that within two years of 2003 Ortiz required either further evaluation of his vision acuity or surgery."). Here, Defendant Doctors concluded that Mixan was in immediate need of surgery, that two surgical procedures could be performed, and that Mixan expressed a preference for one of the two procedures. Defendant Doctors then timely performed the procedure, scheduling it for the next day. DSOF ¶ 28. True, Dr. Greenbaum set aside his general preference for closed reductions, one of two surgical options available for mandible fractures. Pl.'s Resp. DSOF ¶ 43; R. 81-5, Greenbaum Deposition 139:13–140:7. But the undisputed evidence is that he did so because Mixan opted for ORIF. Mixan fails to explain how a preference for MMF over ORIF is indicative of Dr. Greenbaum acting with the requisite intent. The idea of a preference in and of itself implies that Dr. Greenbaum found both options acceptable, but simply liked one more than the other. All in all, in viewing the evidence in the light most favorable to Mixan, the Court finds no evidence of deliberate indifference by the Defendant Doctors in choosing the ORIF procedure.

## B. Performance of Treatment

Defendant Doctors and Mixan also disagree as to whether the surgery was performed so improperly as to support an inference of recklessness. Resp. at 11 ("[E]ach Defendant was a trained ENT surgeon, knew the importance of avoiding these critical errors, and immediately would have known if the errors had occurred.")

Two treatment errors are alleged: first, that Defendant Doctors failed to secure all screws into bone, and second, that Defendant Doctors caused or worsened the displacement of one of Mixan's fractures. Resp. at 9–11. An issue of fact is created, if and only if, Mixan can provide evidence from the record that the Defendant Doctors collectively acted with the requisite intent by either installing the screws into the mandible or causing the fracture displacement to worsen. It is not enough to show that the Defendant Doctors acted negligently or even grossly negligently in performing ORIF; the standard is higher. *See Miranda*, 900 F.3d at 353–54. Mixan must show that the Defendant Doctors acted with reckless disregard, which Mixan does not do. *Id*.

With respect to the screws, it is undisputed that at the time Dr. Swanson performed Mixan's surgery on January 16, 2019, Dr. Swanson's operative report noted that "the inferior screw was not engaged in bone . . .," R. 87-3, Swanson Records at 3. Dr. Swanson later testified that he was unable to determine when or why the screw was misplaced, and whether that screws can migrate. Swanson Dep. Tr. at 125:7-16. These facts are not sufficient for a reasonable factfinder to conclude that the screws were not properly placed at the time of Mixan's surgery at Stroger. With respect to the displacement, a CT scan taken one week following the operation shows visible displacement. The CT scan taken prior to the operation shows no displacement or minimal displacement. In a negligence action, the questions of whether the screws were originally placed properly and whether the subsequent displacement was

caused by substandard performance of the surgery would be appropriate questions of fact. *See Miranda*, 900 F.3d at 353.

The question here, however, is not whether the procedure was negligently performed, but whether it was performed with reckless disregard, which requires a greater showing than negligence or gross negligence. *McCann*, 909 F.3d at 886. Mixan argues that because Defendant Doctors would, or should, recognize a misplaced screw and a surgically-created malocclusion, their detailed documentation of an acceptably successful procedure—including making perioperative changes to plates to ensure satisfactory fixation—is circumstantial evidence of intentionally (or at least recklessly) botching the procedure. *See* Resp. at 10–11. Mixan adduces no evidence to support an inference that the documentation was purposefully or recklessly inaccurate. If documentation of success were all that were necessary to convert a poor or even a negligently-caused outcome into reckless disregard, every negligence allegation against a state official would become a constitutional case.

Mixan's cited cases on this argument are also distinguishable. In *Duncan v. Duckworth*, 644 F.2d 653, 654 (7th Cir. 1981), the Seventh Circuit reversed the dismissal of a claim of deliberate indifference because of "the failure to promptly schedule surgery" for 22 months after it was determined the plaintiff had fractured his wrist. This is not the case here where Defendant Doctors timely performed surgery, and Mixan has not produced evidence that Defendant Doctors believed there was more to be done. DSOF ¶ 28. On the contrary, the evidence suggests that the Defendant Doctors took efforts to get Mixan's surgery right and thought they had

17

done so. While addressing the right mandibular angle fracture, Dr. Greenbaum and Dr. Hernandez attempted to install a smaller champy plate, but immediately realized that champy plate was inadequate and promptly replaced it with an appropriately sized plate. DSOF ¶ 57, 58. After installing the left parasymphyseal fracture plate, Dr. Greenbaum affirmatively wrote that there was excellent reduction and rigid fixation of both fractures. DSOF ¶ 63. Dr. Greenbaum continued to note that Mixan's occlusion was "as close to normal as we were able to achieve," and was satisfactory. DSOF ¶ 63. Dr. Greenbaum's contemporaneous operative notes suggest that he, and presumably the other Defendant Doctors, lacked the purposeful, knowing, and reckless intent required to satisfy this element. As it stands, Mixan has failed to offer any evidence otherwise.

Instead, Mixan relies upon the deposition testimony of Dr. Sisto (Mixan's expert), Dr. Swanson (the doctor who performed corrective surgery on Mixan in 2018), and medical reports completed after Mixan's surgeries. Neither testimony, or after-the-fact medical reports, provide evidence of, or insight into, the Defendant Doctors' intent at the time of the surgery. As noted before, Mixan's testimony is best proffered for claims of negligence and medical malpractice, not civil rights claims under Section 1983.

In a motion for summary judgment, "the burden on the moving party may be discharged . . . pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Mixan's response

does not identify sufficient evidence to create a genuine issue of material fact as to whether Defendant Doctors acted with deliberate indifference.

Accordingly, summary judgment for Defendant Doctors on Count I is appropriate.

## II.    Remaining State Law Claims

Next up, Defendant Doctors urge the Court to dismiss the remaining state law claims for medical malpractice (Count II) and an associated claim for vicarious liability (Count III), without prejudice, citing the general rule that a district court should relinquish jurisdiction over pendent state law claims rather than resolve them on the merits if the federal claim is dismissed before trial. Memo. Summ J., at 14 (citing *Wright v. Associated Ins., Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). Defendant Doctors point out that Mixan's state medical malpractice claims are within the state statute of limitations, that this Court has not significantly expended judicial resources in this case because no substantive actions, such as scheduling pre-trial conferences or briefing motions related to Mixan's medical malpractice claims, have been taken, and it is "unclear how the pendent claims will be decided." *Id*. at 14–15. Mixan counters that regardless of the Court's decision on the federal claim, the Court should retain jurisdiction in the interest of judicial economy, convenience as the state claims arise from the same set of facts as the federal claim, and fairness as it relates to the Illinois statute of limitations and statute of repose. *See* Resp. at 12–15.

The Court has supplemental jurisdiction over state law claims that are part of the same case or controversy as claims over which it has original jurisdiction. 28

U.S.C. § 1367(a). However, the Court in its discretion may decline to exercise this jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Id.* § 1367(c)(3); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("Supplemental jurisdiction is a doctrine of discretion"). Absent reasons of judicial economy, convenience, or fairness, "a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726; *accord, Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims.").

Here, the Court finds, in considering the interests of judicial economy, convenience and fairness to the parties, no reason to retain supplemental jurisdiction here based upon the dismissal of the only claim over which it had original jurisdiction. Under the Illinois statute of limitations and repose for medical negligence claims:

> "[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

735 ILCS 5/13-212(a). Additionally, Federal law provides that:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

Mixan filed this case in August 2019, at which point approximately 10 months would have remained in the four-year period for the action that commenced Defendant Doctors' conduct in June 2016. Since the limitations period was tolled during this case, Mixan will still have 10 months (and an additional 30 days under 28 U.S.C. § 1367(d)) to file his state law claims.

Moreover, 735 ILCS 5/13-217 offers a related protection:

> In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if . . . the action is dismissed by a United States District Court for lack of jurisdiction, . . . , then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court for lack of jurisdiction . . .

735 ILCS 5/13-217 (West 1994)[5]; *cf. Gendek v. Jehangir*, 119 Ill. 2d 338, 343 (1988) ("The purpose of section 13–217 . . . is to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits"). Thus, under Illinois law, Mixan may refile the action within one year or the

---

[5]An act amending this statute, among others, was enacted in 1995 but held unconstitutional in its entirety by the Illinois Supreme Court in 1997. *See Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (1997). Accordingly, the operative statute cited here is the version previously enacted.

remaining period of limitations, whichever is greater. The Court, therefore, finds no reason to retain supplemental jurisdiction over the remaining state claims.

## Conclusion

For the foregoing reasons, the Court grants Defendant Doctors' motion for summary judgment on Count I and dismisses Counts II and III without prejudice. Civil case terminated.

Dated: August 16, 2023

_____
United States District Judge
Franklin U. Valderrama